IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
LEWIS T. BABCOCK, JUDGE

Civil Case No.  11-cv-00344-LTB-BNB

JENNIFER STROH,

                    Plaintiff,

v.

UNITED STATES OF AMERICA,

                    Defendant.

_____

ORDER

_____

This matter is before me on a Motion to Dismiss and Summary Judgment filed by

Defendant, the United States of America, seeking dismissal of the tort claim filed against it by

Plaintiff, Jennifer Stroh. [**Doc # 35**]  Oral arguments would not materially assist me in my

determination.  After consideration of the parties' arguments, and for the reason stated, I DENY

the motion to the extent it seeks dismissal for lack of subject matter jurisdiction, but I GRANT

summary judgment in favor of the Government and, as such, I DISMISS the case.

**I. Facts**

For the purposes of this motion, the following is undisputed unless otherwise indicated.

On June 28, 2008, Plaintiff went to a party at a residence located on the Ft. Carson Army Base

with Specialist Kacey Day, a soldier in the U.S. Army.  At approximately 11:30 p.m. that

evening, Military Police Officers Kyle Ohlrich and Joseph Smither – who were on patrol duty at

Ft. Carson – responded to a noise complaint at the party.  When they arrived, the MPs heard loud

music and saw people inside drinking alcohol.  MP Smither observed Spec. Day outside

throwing up from the front porch when they arrived.  The MPs contacted the host of the party,

who informed them that everybody at the party had been drinking, but that nobody would be driving.

The MPs monitored the residence – driving by 6 or 7 times.  At 1:34 a.m., they responded to a disorderly conduct call at the party, and at 1:53 a.m. the MPs did a "walking patrol" at the residence.  Plaintiff and Spec. Day left the party at approximately 3:00 a.m.  There is evidence that as they left, Plaintiff acted "very" intoxicated, was stumbling around, and needed help getting into the car.

At approximately the same time, the MPs were driving by in their patrol car when they observed a male and a female leave the party and get into a Honda.  The MPs turned their car around, and the Honda pulled out in front of them.  As the Honda was leaving the parking lot, MP Ohlrich recognized the male driver as a person who had earlier been inside the residence.  It is disputed as to whether the MPs knew or suspected, at that time, that the driver was intoxicated.  Plaintiff argues that there is a reasonable inference that the "MPs suspected Spec. Day was intoxicated from the moment they saw him throwing up and, subsequently, when they saw him and [Plaintiff]  leave the party, and get into the Honda, and drive away."   The Government refers to evidence indicating that the MPs did not suspect that the driver was intoxicated until they subsequently observed him driving erratically.

The MPs followed the Honda on base at a distance of between 2-1/2 to 3 and about 5 to 6 car lengths.  The MPs noticed that the Honda's driving got progressively worse.  When they observed the Honda weaving from the center line to the white line on the right side of the road, the MPs wanted to initiate a DUI traffic stop but did not feel it was a good area to do so.  At a stoplight, the MPs pulled up next to the Honda and, at that time, MP Smither noticed the driver

was the same person who had been throwing up at the party.  When the light turned green, the

Honda almost sideswiped the vehicle in front of the MPs, and then swerved and hit the curb.

At that point the MPs initiated a traffic stop by turning on their lights.  The Honda

"immediately took off."  The MPs pursued the Honda towards the exit of the base.  The Honda

accelerated out of Gate 4, recklessly passing another vehicle on the road, and was traveling 85-

90 mph in a 30 mph zone, with the MPs following at 60-65 mph.  The Honda was accelerating

and was 12 car lengths in front of the MPs.  As the MPs headed out Gate 4, they called dispatch

and a K-9 unit and a traffic unit self-dispatched from Gate 4 behind the MPs.  MP Smither also

contacted dispatch to alert outside police agencies sometime after leaving the base.

From Gate 4, the MPs pursued the Honda into the City of Colorado Springs.  During the

pursuit, the Honda was driving recklessly, going from one lane to the other, traveling speeds in

the range of 70-100 mph, and "taking the corners like a race car driver."  The MPs followed at

speeds in excess of the speed limit; estimated at 70 mph.  The MPs' distance behind the Honda

was approximately 40 meters.  During the chase, the MP lost visual contact with the Honda three

times.  At this point 3-4 minutes had elapsed since the Honda took off, and the MPs admitted

that they were uncomfortable pursuing at the speeds they were traveling.

When they regained visual contact with the Honda, as it traveled along Janitell Road, it

was swerving more and driving faster, probably going over 80 mph, and the MPs were trying to

close the distance.  At this point the MPs maintained a distance of 30-60 meters behind the

Honda.  The Honda then crashed into a light pole at the intersection of Janitell Road and Circle

Drive at approximately 80-100 mph, with the MPs still pursuing 40-50 meters behind, with their

lights and siren running.  The crash terminated the pursuit.  Spec. Day, the driver of the Honda,

was killed at the scene; his blood alcohol level was .216% and he was legally intoxicated.

Plaintiff, the passenger in the Honda, was injured as a result of the accident.

Plaintiff asserts that the MPs failed to receive permission to pursue the Honda off base

from the Watch Commander or the "MPDO."  The acting MPDO at the time, Brian Wheat, gave

the MPs permission to "follow" but not to "pursue" the Honda off base.  MPDO Wheat testified

that pursuit would be considered acting in a law enforcement capacity, whereas following would

be at a safer distance – not actually close enough to try and pull the individual over – and would

be subject to the speed limit.  In addition, Plaintiff asserts that the MPs failed to comply with the

applicable Standard Operating Procedures concerning high speed pursuits; specifically the

procedures that:

> (1) prohibited all high pursuits, stating "[h]igh speed pursuits are not authorized
> under any circumstances," (2) prohibited other patrol units from participating in
> the pursuit unless specifically requested or dispatched; (3) prohibited off-post
> pursuits unless the suspected offense was a serious felony such as homicide, rape,
> or robbery; (4) prohibited off-post pursuits unless off-post law enforcement
> agencies with jurisdiction had been notified; (5) required terminating the high
> speed pursuit if the suspect's vehicle exits Fort Carson jurisdiction and the
> pursuing officer does not receive permission to continue the pursuit off the
> installation; (6) required terminating the pursuit if there is a loss of visual contact;
> (7) required terminating the pursuit if the danger to the community outweighed
> the need for immediate apprehension of the suspect; and (8) required terminating
> the pursuit if the suspect has been identified and can be apprehended later when
> the threat to the community is not a factor. [Doc # 40]

Plaintiff subsequently filed this suit against the United States pursuant to the Federal Tort

Claims Act, 28 U.S.C. §§ 1346, 2671-2680 ("FTCA"), asserting a single tort claim that the MPs

acted negligently and recklessly, and caused her resulting injuries, by failing to stop the Honda

and, instead, continuing to pursue it – with activated lights and siren – off the base.

## II.  Motion to Dismiss

### A.  Fed. R. Civ. P. 12(b)(1):

The Government seeks dismissal of Plaintiff's negligence claim on the basis that this court lacks subject matter jurisdiction pursuant to Fed. R. Civ. P. 12(b)(1).  Dismissal under Rule 12(b)(1) is not a judgment on the merits of a plaintiff's case; rather, it calls for a determination that the court lacks authority to adjudicate the matter, attacking the existence of jurisdiction rather than the allegations of the complaint.  *See Castaneda v. INS*, 23 F.3d 1576, 1580 (10th Cir. 1994)(recognizing federal courts are courts of limited jurisdiction and may only exercise jurisdiction when specifically authorized to do so).  The burden of establishing subject matter jurisdiction is on the party asserting jurisdiction.  *Basso v. Utah Power & Light Co.*, 495 F.2d 906, 909 (10th Cir. 1974).

### B.  The FTCA

It is "axiomatic that the United States may not be sued without its consent and that the existence of consent is a prerequisite for jurisdiction."  *United States v. Mitchell*, 463 U.S. 206, 212, 103 S.Ct. 2961, 77 L.Ed.2d 580 (1983).  The FTCA provides such consent to a waiver of sovereign immunity for tort claims "caused by the negligent or wrongful act or omission of any employee of the Government while acting within the scope of his office or employment, under circumstances where the United States, if a private person, would be liable to the claimant in accordance with the law of the place where the act or omission occurred."  28 U.S.C. § 1346(b)(1); *United States v. Olson*, 546 U.S. 43, 44, 126 S.Ct. 51, 163 L.Ed.2d 306 (2005) (sovereign immunity is waived under the FTCA when "local law would make a 'private person' liable in tort law").  The United States is deemed liable "in the same manner and to the same

extent as a private individual under like circumstances."  28 U.S.C. § 2674.  "[T]he FTCA does

not itself create a substantive cause of action against the United States; rather, it provides a

mechanism for bringing a state law tort action against the federal government in federal court."

*Lomando v. United States*, 667 F.3d 363, 372 (3d Cir. 2011)(citation omitted).

The Supreme Court has noted that "[t]he broad and just purpose which the statute was

designed to effect was to compensate the victims of negligence in the conduct of governmental

activities in circumstances like unto those in which a private person would be liable and not

leave just treatment to the caprice and legislative burden of individual private laws."  *Indian*

*Towing Co. v. United States*, 350 U.S. 61, 68, 76 S.Ct. 122, 100 L.Ed. 48 (1955); *see also*

*Rayonier Inc., v. United States*, 352 U.S. 315, 319–320, 77 S.Ct. 374, 1 L.Ed.2d 354

(1957)("Congress, in adopting the FTCA, sought to prevent the unfairness of allowing 'the

public as a whole' to benefit 'from the services performed by Government employees,' while

allocating 'the entire burden' of government employee negligence to the individual, 'leav[ing]

him destitute or grievously harmed'").

I note that while the FTCA specifically allows/limits the United States' liability for the

wrongful acts of law enforcement officers, neither party argues that exception is applicable here.

*See* 28 U.S.C. § 2680(a)(the FTCA does not apply to "the exercise or performance or the failure

to exercise or perform a discretionary function or duty"); 28 U.S.C. §2680(h)(waiving sovereign

immunity for claims against "investigative or law enforcement officers of the United States

Government . . . arising . . . out of assault, battery, false imprisonment, false arrest, abuse of

process, or malicious prosecution"); *see also Arnsburg v. United States*, 757 F.2d 971, 978 (9th

Cir. 1985)("[b]y its terms, section 2680(h) limits the liability of the United States to instances

where law enforcement officials act tortiously"); *Trujillo v. United States*, 313 F.Supp.2d 1146, 1151 (D.N.M.  2003).

The extent of the Government's liability under the FTCA is determined by reference to state law which, in this case, is the law of Colorado.  *FDIC v. Meyer*, 510 U.S. 471, 477-78, 114 S.Ct. 996, 127 L.Ed.2d 308 (1994)(the "law of the place" refers to the substantive law of the state where the wrongful conduct took place"); *see also Henderson v. United States*, 429 F.2d 588, 590 (10th Cir. 1970).  The Government is liable only to the extent that, in the same circumstances, the applicable local law would hold a private person responsible.  *See* 28 U.S.C. § 1346(b)(1) & § 2674.  The party bringing suit against the United States bears the burden of proving that sovereign immunity has been waived.  *James v. United States*, 970 F.2d 750, 753 (10th Cir. 1992)(*citing McNutt v. General Motors Acceptance Corp.,* 298 U.S. 178, 188, 56 S.Ct. 780, 80 L.Ed. 1135 (1936)).

## C.  Private Individual Analogue

The Government argues that the FTCA does not allow Plaintiff's negligence claim in this case because immunity is only waived when local law would make a "private person" liable, and an analogous claim against a private person does not exist under these circumstances.  And, even if a private analogy were found to exist, a negligence claim would not be tenable under applicable Colorado law.

The FTCA makes the United States liable "in the same manner and to the same extent as a private individual under like circumstances."  28 U.S.C. § 2674; *see also* 28 U.S.C. 1346(b)(1).  In *United States v. Olson*, *supra*, mine workers sued the United States for negligence by federal mine inspectors resulting in an accident during which they were injured.  *U.S. v. Olson*, *supra*,

546 U.S. at 45.  The Supreme Court reversed the Ninth Circuit case which had ruled, in part, that

the federal inspections of mines was a unique governmental function that had no private-sector

analogue which, in turn, would subject the United States to liability under the FTCA.  *Id.*  The

Court determined that the term "like circumstances" in the statute does "not restrict a court's

inquiry to the same circumstances, but require it to look further afield."  *U.S. v. Olson*, *supra*,

546 U.S. at 45.  In so doing, the Court relied on *Indian Towing v. United States,* in which it had

previously ruled that an FTCA claim against the Coast Guard – for failure to examine/repair its

lighthouse and failure to "give warning that the light was not operating" – was analogous to

allegations of negligence by a private individual "who undertakes to warn the public of danger

and thereby induces reliance," as such private person "must perform his 'good Samaritan' task in

a careful manner."  *Indian Towing v. U.S., supra,* 350 U.S. at 64.   As a result, the Court in

*United States v. Olson* found that there are private persons, under the theory of a negligent good

Samaritan, that are in "like circumstances" to federal mine inspectors sufficient to implicate the

FTCA.  *U.S. v. Olson*, *supra*, 546 U.S. at 45.

**D. Negligent Driver Analogue**

        In order to invoke subject matter jurisdiction under the FTCA, Plaintiff 's primary

argument is that the circumstances here are analogous to a claim for negligence or reckless

driving by a private citizen.  Plaintiff argues that the Posse Comitatus Act, 8 U.S.C. § 1385,

restricts military involvement in civilian law enforcement.  She contends that because the MPs

here were engaged in unauthorized law enforcement activities – in that they were engaged in a

high speed pursuit, off base, without appropriate permission and in violation of their Standard

Operating Procedures – they were not acting as military police, but rather were private

individuals.  She further argues that the local laws of Colorado Springs and the State of Colorado require private individuals to obey traffic laws, including those that require driving with due care, and that prohibit speeding, reckless driving, and reckless endangerment.  Thus, the MPs' actions in not driving with due care is, under the circumstances, analogous to a negligence claim against a private individual under Colorado law.

In support of her argument, Plaintiff refers me to *Lee v. United States*, 570 F.Supp.2d 142, 150 (D.D.C. 2008), in which the plaintiffs – who were passengers in a car that crashed after the driver attempted to evade federal police officers during a car chase – sought to recover damages from the federal police for their injuries under the FTCA.  After finding that the laws of District of Columbia require private individuals to obey traffic laws when operating their vehicles, the District Court ruled that it was an appropriate private analogue to support an FTCA action under the circumstances.  *Id.* at 150 (rejecting the ruling of *Hetzel v. United States,* 43 F.3d 1500, 1503 (D.C. Cir. 1995), that there was no readily available private analogue upon which to premise liability under the FTCA related to a high-speed chase of a suspected felon); *see also Holthusen v. United States*, 498 F.Supp.2d 1236, 1240 (D.Minn. 2007).

The Government disagrees, and argues that there is no private analogue to the circumstances presented here.  Specifically, it maintains that because private persons do not have police vehicles with lights and sirens with which to engage in pursuits of suspected drunk drivers, no private person analogue exists.  As such, the pursuit in this case was a uniquely governmental law enforcement function, of which there is no private person analogue, and thus there is no waiver of sovereign immunity under the FTCA.  The Government cites to *Washington v. Drug Enforcement Administration*, 183 F.3d 868, 873 (8th Cir. 1999), in which

9

the Eighth Circuit determined that FTCA does not provide a private cause of action against the

United States for constitutional torts committed by DEA agents in obtaining and executing a

search warrant on the basis that "state law cannot provide liability for the violation of a federal

constitutional right" and, in addition, that " the application process for, and execution of, a

search warrant has no private analogue."  *See also Wright v. United States*, 963 F.Supp. 7, 17

(D.D.C. 1997)(noting that while an action can be held in trespass for the execution of an invalid

search warrant, "the discrete act of applying for such a warrant is not reviewable under the

FTCA" as "[t]he act of applying for a search warrant has no analogous counterpart for private

citizens"); *Casillas v. United States*, 2009 WL 735193, 10 (D.Ariz. 2009)(not published).

I conclude, however, that the MPs' high speed pursuit in this case is analogous to a private

claim of negligent driving.  "To say that the challenged action is one that only the federal

government does in fact perform does not necessarily mean that no private analogue exists," as

the Supreme Court is clear that Courts are "require[d] ... to look further afield" for a private

analogue when the Government is the only entity that performs the actions complained of.

*Liranzo v. United States*, ___ F.3d ___, 2012 WL 3217660 (2nd Cir., Aug 9, 2012)(*quoting U.S.

v. Olson*, *supra*, 546 U.S. at 46)(finding that although immigration detentions are "uniquely

governmental," that does not  mean they have no private analogue under the FTCA).  "[A]ll

Government activity is inescapably 'uniquely governmental' in that it is performed by the

Government." *Id.* (*citing Indian Towing v. U.S., supra,* 350 U.S. at  68).  In so doing, I reject the

Government's argument to the extent that it contends that finding a police pursuit analogous to an

ordinary negligent driver would create the absurd result that such pursuits would always

constitute negligence *per se.  See In re FEMA Trailer Formaldehyde Prod. Liab. Litig.*

*(Miss.Plaintiffs)*, 668 F.3d 281, 288 (5th Cir. 2012)(citations omitted)("[b]ecause the federal

government could never be exactly like a private actor, a court's job in applying the standard is to

find the most reasonable analogy; [i]nherent differences between the government and a private

person cannot be allowed to disrupt this analysis").

Plaintiff refers me to Colorado law supporting her negligence claim against the

Government for the MPs' actions under a private driver analogue.  Specifically, Plaintiff cites to

several statutes that regulate traffic and the operation of vehicles on roads in Colorado.  *See* Colo.

Rev. Stat. §42-4-1402 (careless driving); § 42-4-1101 (speeding); § 42-4-108 (emergency

vehicles); & §18-3-208 (reckless endangerment).  Plaintiff also refers me to traffic ordinances of

the City of Colorado Springs, including Ordinance §10.6.102 which provides that:

> Every person operating a motor vehicle on a highway, street, public way or
> elsewhere in this City, shall drive the same at a speed and in a manner which is
> reasonable and prudent under the conditions and having regard to the actual and
> potential hazards then existing; and every driver of a vehicle, in compliance with
> legal requirements and the duty to use due care, shall use every reasonable means
> to avoid endangering or colliding with any person, property, vehicle or other
> conveyance anywhere within the City.

*See also* Ordinance §10.5.101 (making it "unlawful for any person to drive

a vehicle on a highway at a speed greater than is reasonable and prudent under the

conditions and hazards, actual and potential, then existing"); & §10.5.103 (posting

of speed limits).  In Colorado, the violation of a safety statute regulating the use of

roadway is evidence of neglect.  *See e.g. Pyles-Knutzen v. Board of County*

*Commissioner of County of Pitkin,* 781 P.2d 164, 169 (Colo. App. 1989)

In response, the Government asserts that Plaintiff's negligence claim is not tenable under

Colorado law – for the purposes of FTCA applicability – because the MPs' conduct was

privileged pursuant to Colo. Rev. Stat. § 42-4-108, which provides exception to the waiver of

governmental immunity for emergency vehicle pursuits by Colorado police officers.  Plaintiff, in

response, again refers me to Colorado Springs Ordinances that govern the immunity of police

officers engaged in a pursuit.  *See* Ordinance §10.5.109(A)(providing a limited exemption from

the speed regulations for authorized police vehicles in pursuit of a suspected violator); Ordinance

§10.5.103(B)(limiting the exemption to "not relieve the driver of an authorized emergency

vehicle from the duty to drive with due regard for the safety of all persons using the street, nor

shall the provisions protect the driver of any vehicle from the consequences of a reckless

disregard for the safety of others"); *see also* Ordinance §10.24.107 (when in pursuit of an actual

or suspected violator of the law, an authorized emergency vehicle may "proceed past a red or stop

signal and to exceed the maximum speed limit so long as the driver does not endanger life or

property").

However, when reviewing the performance of activities which private persons do not

perform, a court looks to the state-law liability of private entities, *not to that of public entities*,

when assessing the Government's liability under the FTCA.  *U.S. v. Olson, supra*, 546 U.S. at 46

(*quoting Indian Towing v. U.S., supra,* 350 U.S. at 64)(emphasis added); *see also* 28 U.S.C. §

2674 (the United States is answerable under the FTCA "in the same manner and to the same

extent as a private individual under like circumstances").  Therefore, I conclude that for the

purpose of assessing FTCA applicability, I am not to review the Colorado negligence standards

applicable to law enforcement officers during vehicle pursuits, but rather the liability of private

persons under the circumstances.  The question is a close one.  But, I conclude Plaintiff's

negligence claim against the Government, for the actions of the MPs during the high speed chase,

is tenable under Colorado law and provides this court with jurisdiction under the FTCA.

**E.  Good Samaritan/Citizen Arrest Analogue**

Moreover, even if the negligence driver does not provide a private analogy to the MPs'

conduct here, I likewise agree with Plaintiff's alternative assertion that it is analogous to a claim

against a private citizen who caused injury while attempting to perform a citizen's arrest, under

Colorado law, sufficient to allow her negligence claim under the FTCA.

In so doing, I first agree with the Government's argument – which was not addressed by

Plaintiff – that a Good Samaritan analogy could not support FTCA jurisdiction because a private

person would not be liable under Colorado law for negligence.  *See* Colo Rev. Stat. § 13-21-

116(2)(a)(providing, in part, that "[t]o encourage the provision of services or assistance by

persons on a voluntary basis, a person shall not be deemed to have assumed a duty of care where

none otherwise existed when he performs a service or an act of assistance . . .").

However, I do find a private analogue is available, under Colorado law, to a private

individual making a citizen's arrest.  Colorado Revised Statute §16-3-201 allows a person who is

not a peace officer to arrest another person when any crime has been or is being committed by the

arrested person in the presence of the person making the arrest.  *See also* Colo. Rev. Stat.

§18-1-707(7)(providing that "[a] private person acting on his own account is justified in using

reasonable and appropriate physical force upon another person when and to the extent that he

reasonably believes it necessary to effect an arrest, or to prevent the escape from custody of an

arrested person who has committed an offense in his presence").

Again, although a close question, I conclude that for the purpose of invoking subject

matter jurisdiction of the court under the FTCA, that the private analogues of an individual

negligent driver and of an individual making a citizen's arrest are sufficient, under Colorado law,

to invoke the FTCA making the Government liable "in the same manner and to the same extent as

a private individual under like circumstances," 28 U.S.C. § 2674, and "under circumstances

where the United States, if a private person, would be liable to the claimant in accordance with

the law of the place where the act or omission occurred," 28 U.S.C. 1346(b)(1).  As such, I reject

the Government's request for dismissal of Plaintiff's negligence claim on the basis that this court

lacks subject matter jurisdiction pursuant to Fed. R. Civ. P. 12(b)(1).

### III.  Summary Judgment

**A.  Fed. R. Civ. P. 56**

The Government also seeks dismissal of Plaintiff's claim by summary judgment pursuant

to Fed. R. Civ. P. 56.  Specifically, the Government asserts that even if Plaintiff's claim is

cognizable under the FTCA, she cannot make out a case of negligence and, as such, it is entitled

to summary judgment in its favor.

When deciding a motion under Fed. R. Civ. P. 56, summary judgment shall be granted for

the movant if the pleadings, depositions, answers to interrogatories, admissions, or affidavits

show that there is no genuine issue of material fact and the moving party is entitled to judgment

as a matter of law.  The non-moving party has the burden of showing that there are issues of

material fact to be determined.  *Celotex Corp. v. Catrett*, 477 U.S. 317, 322, 106 S.Ct. 2548, 91

L.Ed.2d 265 (1986).  If a reasonable juror could not return a verdict for the non-moving party,

summary judgment is proper and there is no need for a trial.  *Id.* 477 U.S. at 323.  The operative

inquiry is whether, based on all documents submitted, reasonable jurors could find by a

preponderance of the evidence that the plaintiff is entitled to a verdict.  *Anderson v. Liberty*

*Lobby, Inc.*, 477 U.S. 242, 250, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986).  However, summary judgment should not enter if, viewing the evidence in a light most favorable to the plaintiff and drawing all reasonable inferences in that party's favor, a reasonable jury could return a verdict for the plaintiff.  *Celotex Corp. v. Catrett*, *supra*, 477 U.S. at 252; *Mares v. ConAgra Poultry Co.,* 971 F.2d 492, 494 (10th Cir. 1992).

**B. Analysis**

To establish a claim of negligence in Colorado, a plaintiff must show a legal duty of care on the defendant's part, breach of that duty, injury to the plaintiff, and causation (i.e., that the defendant's breach of its legal duty caused the plaintiff's injury).  *Gerrity Oil & Gas Corp. v. Magness*, 946 P.2d 913, 929 (Colo. 1997); *see also Davenport v. Community Corrections of the Pikes Peak Region, Inc.,* 942 P.2d 1301, 1303 (Colo. App. 1997)(*citing Casebolt v. Cowan,* 829 P.2d 352 (Colo. 1992)).  Whether a legal duty exists, and the scope of that duty if it does, are questions of law to be determined by the court.  *Metro. Gas Repair Serv., Inc. v. Kulik*, 621 P.2d 313, 317 (Colo. 1980).  In determining whether a duty should be recognized, a court must consider many factors and, because no single factor controls, the question of whether a duty should be imposed in a particular case is essentially one of fairness under contemporary standards – whether reasonable persons would recognize a duty and agree that it exists.  *HealthONE v. Rodriguez ex rel. Rodriguez,* 50 P.3d 879, 888 (Colo. 2002)(*quoting Taco Bell, Inc. v. Lannon*, 744 P.2d 43, 46 (Colo. 1987)).

Plaintiff contends that a legal duty should be recognized in this case, as the risk of injury to Plaintiff – the passenger in the eluding Honda being driven by a suspected drunk driver – was serious and foreseeable by the MPs in the course of their actions in pursuit thereof.  Plaintiff

15

further argues that a duty and standard of care are established by the common law doctrine of

negligence per se, which provides that legislative enactments, such as statutes and ordinances, can

prescribe the standard of conduct of a reasonable person, or duty, such that a violation of the

statute or ordinance constitutes a breach of duty of care.  *See Lombard v. Colorado Outdoor*

*Educ. Center, Inc.,* 266 P.3d 412, 417 (Colo. App. 2011).  Plaintiff argues that the traffic laws

governing Colorado and Colorado Springs – which prohibit speeding, reckless driving and require

drivers to obey the speed limit – provide a duty in this case.  Plaintiff also points out that

Colorado law grants police officers only limited privileges and immunities during such chases,

provided that they act with due care and not in reckless disregard of others.  *See generally* Colo.

Rev. Stat. §24-10-106(4) & §42-4-108(2).  Plaintiff argues that the applicable standard of care,

then, is that of a reasonable driver or, arguably, a reasonable police officer during a high speed

chase.  She further assert that, considering the totality of the circumstances, a fact-finder could

reasonably conclude that the MPs' actions were negligent in this situation and, hence, that their

conduct breached their duty of care to Plaintiff.

In its reply, the Government does not dispute that legislative enactments such as traffic

laws can prescribe the standard of conduct for a reasonable person.  It argues, however, that to

establish negligence per se, Plaintiff must still demonstrate a causal relationship between the

breach and her injury.  *See Silva v. Wilcox,* 223 P.3d 127, 135 (Colo. App. 2009)(*citing Scott v.*

*Matlack, Inc.,* 39 P.3d 1160, 1166 (Colo. 2002)).  In order to prove causation the plaintiff must

demonstrate, by a preponderance of the evidence, that the alleged "injury would not have

occurred but for the defendant's negligent conduct." *Kaiser Foundation Health Plan v. Sharp*,

741 P.2d 714, 719 (Colo. 1987).  The 'but for' test is "whether, but for the alleged negligence, the

harm would not have occurred[; t]he requirement of 'but for' causation is satisfied if the negligent

conduct in a natural and continued sequence, unbroken by any efficient, intervening cause,

produce[s] the result complained of, and without which the result would not have occurred."

*North Colo. Med. Center, Inc. v. Comm. on Anticompetitive Conduct*, 914 P.2d 902, 908 (Colo.

1996)(*quoting Smith v. State Comp. Ins. Fund*, 749 P.2d 462, 464 (Colo. App. 1987)); *see also*

Colo. Jury Instr., Civil 9:18 (4th ed.)(defining "cause" as an act "which in natural and probable

sequence produced the claimed injury[; i]t is a cause without which the claimed injury would not

have happened").  The Government contends that the undisputed conduct of Spec. Day – eluding

the MPs, while driving under the influence of alcohol, and ultimately crashing into a light pole

after losing control of the Honda in which Plaintiff was the passenger – was "the predominant

cause of Plaintiff's injuries."   Thus, it argues that Plaintiff cannot establish causation, as a matter

of law, against the Government for the actions of the MPs in attempting to pull Spec. Day over,

and then pursuing him when he would not do so.

        Plaintiff argues, in response, that while Spec. Day's actions caused the accident, the MPs'

negligent conduct – the alleged unauthorized off-base, high speed chase of a suspected drunk

driver – was also a cause of Plaintiff's injuries, even though it may not have been the most

immediate cause.  Plaintiff refers me to the Colorado Civil Jury Instruction 9:20, which discusses

circumstances in which the injuries are the result of concurrent causes.  It provides, in part, that:

> If more than one act or failure to act contributed to the claimed injury, then each
> act or failure to act may have been a cause of the injury. A cause does not have to
> be the only cause or the last or nearest cause. It is enough if the act or failure to act
> joins in a natural and probable way with some other act or failure to act to cause
> some or all of the claimed injury.

Colo. Jury Instr., Civil 9:20 (4th ed.).  Plaintiff argues that there is sufficient evidence of

concurrent causation, and that a reasonable finder of fact could determine that the MPs' pursuit

was a cause of Spec. Day's speeding and reckless driving, and that it contributed to the accident

causing her injuries.  I disagree.

While the MPs' acts were within the causal chain of events, their actions in attempting to

pull over the Honda, and then engage in an unauthorized pursuit of it when Spec. Day did not

comply, was not the but-for cause of the Plaintiff's injuries.  Rather, it was Spec Day's actions –

in failing to pull over, then driving recklessly at high speed while intoxicated to evade the MPs,

resulting in the crash into a lightpole at speeds too fast to turn the corner – that was the but-for

cause of Plaintiff's injuries.  Although causation is generally a question of fact, causation

becomes a question of law for the court when the facts are undisputed and reasonable minds could

draw but one inference from them.  *Allen v. Martin,* 203 P.3d 546, 566 (Colo. App. 2008); *see*

*also Sanderson v. Heath Mesa Homeowners Ass'n*, 183 P.3d 679, 683 (Colo. App. 2008).  I

conclude that a reasonable fact finder could not find that the MPs actions were the but-for cause

of the accident that resulted in Plaintiff's injuries at issue here.

## IV.  CONCLUSION

Because I have concluded that the FTCA applies to Plaintiff's tort claim raised here

against the Government, pursuant to 28 U.S.C. §2674 & § 1346(b)(1), I DENY the Government's

request for dismissal for lack of subject matter jurisdiction under Fed. R. Civ. P. 12(b)(1).

However, I GRANT the Government's request for entry of summary judgment in its favor on

Plaintiff's tort claim under Fed. R. Civ. P. 56.

ACCORDINGLY, I ENTER summary judgment in favor of Defendant and, as such, I

GRANT the Motion to Dismiss [**Doc #35**] and I DISMISS the case with costs awarded

Defendant.


Dated: September __17th__, 2012, in Denver, Colorado.


BY THE COURT:


__s/Lewis T. Babcock_____
LEWIS T. BABCOCK, JUDGE